## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, ERIC MADRY, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, being duly sworn under oath, hereby depose and state:

1. I am a law enforcement officer of the United States, and under 18 U.S.C. § 3051, I am charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States, may carry firearms, serve warrants and subpoenas issued under the authority of the United States, make arrests without warrant for any offense against the United States committed in my presence, or for any felony under the laws of the United States if there are reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since July 19, 2020. I have completed the Federal Criminal Investigator Training Program, along with ATF Special Agent Basic Training at the Federal Law Enforcement Training Center located in Glynco, Georgia. As a result of my training and experience as an ATF Special Agent (SA), I am familiar with a wide array of Federal Criminal Law. In addition to the firearms, arson, and explosives related training received in the previously mentioned courses, I have conducted and/or participated in investigations involving firearms, firearms trafficking, and drug trafficking. I have received field training and accrued practical experience in the following areas: surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, interception, and analysis of recorded conversations, and in analyzing cellular telephone data and locations.

3. I was previously employed as a State Trooper with the Indiana State Police Department, from May 2016 through June 2020. I am a graduate of the Indiana State Police Academy which is in Plainfield, Indiana. Indiana State Police training consisted of twenty-six weeks of training in the following areas: Indiana State criminal and traffic law, crash investigations, criminal and traffic law enforcement, surveillance, interviewing both witnesses and suspects, applying for search and arrest warrants, writing case reports, completing charging affidavits, processing crime scenes, submitting evidence, and testifying in court.

4. I have conducted numerous investigations involving the possession, distribution, and trafficking of controlled substances, in addition to the concealment of illicit proceeds from the sale of the controlled substances, violation of Federal firearm laws, and use of firearms in furtherance of other criminal offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to surveillance, utilizing confidential informants, exploitation of telephone and social media data, the interception of wire communications under Title III, interviews, and the review of financial documents. I am presently assigned to ATF's Cleveland Field Office.

5. The facts contained in this Affidavit are based upon my personal knowledge of the investigation, in addition to the knowledge, training, experience, and the observations of other law enforcement officers. All observations and information referenced below that were not personally made or learned by me, were relayed to me by the persons who made such observations or learned such information, to include being provided information verbally or in written format. This Affidavit contains information necessary to support probable cause for this application. This Affidavit is not intended to be a complete review of all topics discussed in interviews or conversations referenced herein. In addition, this Affidavit is not intended to

include each, and every fact and matter observed or known by me, other law enforcement officers, or the government.

6. I am submitting this affidavit in support of a Criminal Complaint and Arrest Warrant pursuant to the Federal Rule of Criminal Procedure, including Rules 3, 4 and 4.1.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Deshane IRONS committed violations of 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm) and Title 18, United States Code, Section § 922(a)(1)(A) and 924(a)(1)(D) Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License.

## PROBABLE CAUSE

8. The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), is conducting a criminal investigation of Deshane IRONS, M/B, DOB:06/05/19XX regarding possible violations of Title 18, United States Code, Section (§ 922(a)(1)(A) and 924(a)(1)(D).

### Investigation into Deshane Irons Selling Firearms Begins

9. On or about January 24, 2023, SA Eric Madry received an anonymous tip, via the Crime Stoppers of Cuyahoga County, about Deshane IRONS potentially trafficking stolen firearms throughout the City of Cleveland, Ohio. SA Madry learned, via the tip, that IRONS frequents bars and night clubs seeking to break into and steal firearms from vehicles. Additionally, SA Madry discovered that IRONS is known to post firearms and/or photographs with firearms on IRONS's person, on multiple social media platforms.

10. SA Madry queried IRONS on the Facebook and Instagram platforms as well. IRONS's profiles on both Instagram and Facebook are viewable to the public and not private. SA Madry discovered IRONS's username on Instagram and Facebook.

11. SA Madry monitored IRONS on Facebook and later observed IRONS to have posted photographs/stories with multiple different handguns. SA Madry additionally observed IRONS to have posted numerous stories pertaining to narcotics

12. On or about January 25, 2023, SA Madry engaged IRONS in conversation on Facebook Messenger utilizing an undercover (UC) account. All the conversation between SA Madry's UC account and IRONS occurred on Facebook Messenger and will herein after be referred to as the contact with SA Madry. SA Madry initially informed IRONS that SA Madry obtained information that IRONS had items for sale. IRONS asked SA Madry how much money SA Madry was trying to spend. IRONS offered to sell SA Madry a handgun for three-hundred and fifty dollars ($350.00). IRONS provided SA Madry with photographs of two (2) handguns as well.

13. In or around February of 2023, agents learned that IRONS had in fact engaged in the sale of firearms to another individual and agents then began to communicate with IRONS directly regarding the same of firearms.

14. On or about February 3, 2023, IRONS and SA Madry conversed on Facebook Messenger. IRONS provided SA Madry with two (2) more photographs, but this time of rifles. IRONS stated that he was selling the AK style rifle for one-thousand one-hundred dollars ($1100.00) and the other rifle for nine-hundred dollars ($900.00). IRONS stated that if IRONS still had narcotics, IRONS would sell that to SA Madry as well.

15. On or about February 4, 2023, IRONS provided SA Madry with additional

photographs of two (2) Glock handguns. SA Madry inquired about the price for the firearms, but IRONS indicated that he sold the other two firearms but would have more soon.

16. On or about February 5 and 6, 2023, SA Madry contacted IRONS and inquired about previously mentioned firearms in which IRONS offered to sell. IRONS stated, "there's all type of shit out here just let lmk when u ready they high tho 750 for a Glock 26 with 15. Rd. The ones I posted I want 800 a piece". SA Madry confirmed with IRONS that IRONS had sold the previously mentioned/shown Glock handgun. IRONS stated, "These all-new sticks nd yeah what u want." IRONS provided SA Madry with a photograph of a Glock firearm. SA Madry additionally requested to purchase three and a half (3.5) grams of Cocaine from IRONS. IRONS informed SA Madry that IRONS had to check with IRONS' associate. IRONS told SA Madry that IRONS would sell an eight-ball, which is known to law enforcement to be three and a half grams of cocaine for one-hundred and sixty dollars ($160.00) (Figure -9).

17. Later in the conversation on or about February 6, 2023, SA Madry asked IRONS if IRONS still had the previously mentioned rifle that IRONS had showed SA Madry. IRONS advised SA Madry, "This one gone" and provided the same photograph from the past. IRONS informed SA Madry that when they (IRONS and SA Madry) meet, "We gone go closer to my Nigga it's 1100 for it." IRONS provided SA Madry with the same photograph. SA Madry and IRONS negotiated the prices for the narcotics and firearms. The conversation was ended.

18. On or about February 8, 2023, SA Madry and IRONS spoke in reference to the firearm and narcotics purchase. IRONS confirmed with SA Madry the price of two-

thousand dollars ($2000.00) for the rifle, the Glock firearm, and the Cocaine. IRONS indicated to SA Madry that IRONS's associate would have the rifle. IRONS informed SA Madry that IRONS would bring additional narcotics as well.

19. Later, on or about February 8, 2023, SA Madry met with the ATF Confidential Informant (CI) and an ATF Undercover (UC) Agent at a predetermined location. The ATF CI's person was searched, no contraband was located.

20. SA Madry provided the ATF CI and the ATF UC Agent with government funds for the purchase of the rifle, Glock handgun, and narcotics. Additionally, SA Madry provided the ATF CI and ATF UC Agent with audio/video recording devices and surveillance devices, which were used for live audio and video transmission during the firearm and narcotics purchase. The ATF CI and ATF UC Agent entered the ATF UC vehicle. The ATF UC and ATF CI departed the predetermined location and arrived at the location to meet IRONS.

21. SA Madry informed the ATF CI to call IRONS on his cellular telephone number. The ATF CI called IRONS and IRONS told the ATF CI to drive to the parking spot next to IRONS, who had arrived inside of a 2014, silver Nissan Rogue, bearing Ohio license plate number JDG2149. It was learned that a second male, later identified as Darsean SCOTT was the front seat passenger of the Nissan.

22. As the ATF CI and ATF UC Agent parked and exited the ATF UC Vehicle, the ATF UC Agent could see the Glock, model 26, 9mm handgun bearing serial number AFVB730 and an Izhmash, model Saiga, 7.62 caliber rifle, bearing serial number L08106097 sitting on top of items located inside of the trunk. IRONS then retrieved a clear plastic baggie containing suspected cocaine and a clear plastic baggie containing pills from his jacket and

handed them to the ATF CI. The ATF CI asked IRONS how many pills were in the bag and IRONS replied, "15 beans, these some fire ass beans." The ATF CI asked IRONS how much the cost was, and IRONS replied, "shit, two for everything," referencing the pre-agreed upon price of two- thousand dollars ($2000) for the firearms and narcotics. The ATF CI provided the government funds to IRONS. The ATF UC Agent asked IRONS for his telephone number, so they could "do some business on the side" and IRONS replied, "973-5011". The ATF CI stated, "I'm makin' money off of you" and IRONS replied "I ain't mad at you, we all about to eat together, shit."

23. The ATF CI and ATF UC Agent took possession of the Izhmash, model Saiga, 7.62 caliber rifle, bearing serial number L08106097 and moved it to the ATF UC vehicle. The ATF CI took possession of the Glock, model 26, 9mm handgun bearing serial number AFVB730.

24. The ATF CI and ATF UC entered the ATF UC vehicle and departed.

### IRONS sells additional firearms and narcotics on February 10, 2023

25. Later, on or about February 8, 2023, IRONS sent SA Madry another photograph of a Glock firearm via Facebook Messenger.

26. On or about February 10, 2023, IRONS agreed to sell the ATF UC Agent a Glock, model 23, handgun with a laser, seven (7) grams of heroin, and suspected narcotic pills for one-thousand three-hundred dollars ($1300.00).

27. On or about February 10, 2023, two ATF UC Agents were provided pre-recorded government funds before the purchase. The two ATF UC Agents operated an ATF UC vehicle during the operation.

28. The two ATF UC Agents arrived at the predetermined location. Shortly

7

after, IRONS arrived in a black, 2016 Chrysler 300, bearing Ohio license plate number JOF4917.

    29.    IRONS exited the driver's seat of the Chrysler and entered into the rear driver's side door of the ATF UC vehicle. IRONS removed a Glock, model 23, 40 caliber handgun bearing serial number AGMC136, from the right side of his waist area and handed it to ATF UC Agent#2, who was seated in the front passenger's seat of the ATF UC vehicle. IRONS then retrieved a clear plastic baggie containing suspected heroin and a clear plastic baggie containing suspected narcotics pills from his right jacket pocket and handed them to ATF UC Agent#1. ATF UC Agent#2 was examining the Glock handgun and stated, "that's a nice fuckin' Glock, bro." IRONS replied, "that bitch clean, too." ATF UC Agent#2 asked, "you a Glock guy? What do you walk with?" IRONS replied, "I like choppers, I don't really come outside with handguns, I get caught with them too much." ATF UC Agent#2 asked, "can you get your hands on more Glocks?" IRONS replied, "yea, I'll have some, by the, uh I gotta see what my n*gga got, the other n*gga that was with me the other day (SCOTT), he got, he got some poles too, if you tap in with him." ATF UC Agent#1 advised IRONS that ATF UC Agent#1 was going to contact SCOTT, on Monday to arrange another purchase. ATF UC Agent#1 asked IRONS, "you cool if I go right with him, right?" IRONS replied, "yep, yep." ATF UC Agent#2 asked IRONS, "what's up with this, bro? Can you get a lot more of this?" This question was in reference to the narcotics that IRONS provided. IRONS replied, "uh, he got some, he got some, I mean my shit be good, like I can't speak to somebody else, but it come and go, like, I don't really like selling drugs, like I'd rather go work" and "I go to court, in like a week, so." ATF UC Agent#1 paid IRONS with the government funds, and he replied, "good lookin. I appreciate the business, everything else,

soon, with me, gonna be lower, so, it ain't gonna be as high no more, so I appreciate it."

30. ATF later conducted a NCIC query of the Glock model 23 handgun bearing S/N: AGMC136. The query returned with the handgun being stolen in the City of Bedford on or about February 5, 2023.

31. Later, on or about February 10, 2023, IRONS sent SA Madry another photograph of a firearm utilizing Facebook Messenger. IRONS informed SA Madry the price for that firearm was seven-hundred dollars ($700.00) (Figure - 18).

32. On or about February 13, 2023, IRONS provided SA Madry with another photograph of a firearm utilizing Facebook Messenger.

### IRONS continues to advertise firearms he has for sale

33. Later, on or about February 15, 2023, IRONS provided SA Madry with another photograph of a Glock firearm with an additional magazine. IRONS informed SA Madry that IRONS was selling the Glock with the additional magazine for seven-hundred and fifty dollars ($750.00).

34. On or about February 19, 2023, IRONS contacted SA Madry and stated, "Lmk I got some shit in". IRONS provided SA Madry with photographs which contained four (4) firearms. IRONS offered to sell two (2) of the firearms for five-hundred dollars ($500.00).

35. On or about February 25, 2023, IRONS contacted SA Madry and stated, "Wassup I got some new Shit." On or about February 26, 2023, IRONS provided SA Madry with photographs which contained thirteen (13) firearms in which IRONS had for sale. IRONS stated, "Yessir between me nd my boy we got enough to supply a whole hood.".

### IRONS sells additional firearms and narcotics on February 28, 2023

36. On or about February 28, 2023, the ATF UC Agent and IRONS confirmed the details and meeting location for the purchase with the ATF UC Agent. IRONS provided the ATF UC Agent a photograph which contained four (4) firearms as well.

37. On or about February 28, 2023, two ATF UC Agents were provided pre-recorded government funds before the purchase.

38. The two ATF UC Agents arrived at the predetermined location. ATF UC Agent#1 sent IRONS a text message advising IRONS that ATF UC Agent#1 and ATF UC Agent#2 had arrived at the predetermined location.

39. IRONS arrived at the predetermined location and entered the ATF UC vehicle. IRONS provided ATF UC Agent#2 the following items: Smith and Wesson, Model:SD9 VE, Caliber: 9mm, Handgun, SIN: FZXl077, a Taurus, Model: G3C, Caliber 9mm, Handgun, SIN. ACM654116, a Taurus, Model: G2C, Caliber 9mm, Handgun, SIN: ACD823289, and a Ruger, Model: Secunty-9, Caliber- 9mm, Handgun, SIN; 381-85567. ATF UC Agent#1 provided IRONS with one-thousand four-hundred dollars ($1400.00) in government funds for the firearms. At the conclusion of the purchase, ATF surveillance personnel observed IRONS walked back to the TARGET LOCATION with the same aforementioned bag on his back and entered the front door of the residence.

### IRONS continues to advertise firearms he has for sale

40. On or about March 1 & 5, 2023, IRONS contacted the ATF UC Agent and informed the ATF UC Agent that IRONS still had firearms for sale and provided two (2) photographs of firearms.

### IRONS continues to advertise firearms he has for sale

41. On or about March 11, 2023, IRONS contact SA Madry via Facebook Messenger and advertised two additional firearms IRONS had for sale.

42. On or about March 15, 2023, ATF SA Gerrod Brigg, a Firearm Interstate Nexus Expert, was provided the firearms information for the following firearms which SCOTT sold to the ATF UC Agents during the course of this investigation:

   a. Glock, Model 26, 9mm Caliber, Handgun, S/N: AFVB730
   b. Izhmash, Model Saiga, 7.62 Caliber, Rifle, S/N: L08106097
   c. Glock, Model 23, 40 Caliber, Handgun, S/N: AGMC136
   d. Ruger, Model Security-9, 9mm Caliber, Handgun, S/N: 38185567
   e. Smith and Wesson, Model SD9VE, 9mm Caliber, Handgun, S/N: FZX1077
   f. Taurus, Model G2C, 9mm Caliber, Handgun, S/N: ACD823289
   g. Taurus Model G3C, 9mm, Caliber, Handgun, S/N: ACM654116

SA Briggs stated that based on his knowledge, training, and experience, the above listed firearms were not manufactured in the State of Ohio. Thus, all of the firearms sold had previously traveled in interstate commerce

### CONCLUSION

43. Based upon the **above** listed facts and circumstances, your affiant believes and asserts that there is probable cause to believe that Deshane IRONS did knowingly and intentionally engage in activity which violated the offense of: Title 18, United States Code, Section §

922(a)(1)(A) and 924(a)(1)(D), Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License.

44. Based on the foregoing, your affiant respectfully requests that a Criminal Complaint and Arrest Warrant be issued for Deshane IRONS for the above referenced violations of Title 18 United States Code, Section § 922(a)(1)(A) and 924(a)(1)(D).

_____
Eric Madry, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED AND SWORN TO ME THIS 15th DAY OF MARCH 2023
VIA TELEPHONE AFTER SUBMISSION BY RELIABLE ELECTRONIC
MEANS. FED. R. CRIM. P. 4.1 AND 41(d)(3).

_____
James E. Grimes Jr., United States Magistrate Judge